* * * * * * * * * * *
The Full Commission reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Griffin and the briefs and oral arguments before the Full Commission. The appealing party has not shown good ground to reconsider the evidence, receive further evidence, rehear the parties or their representatives, or amend the opinion of award, except for minor modifications. Accordingly, the Full Commission affirms the Opinion and Award of Deputy Commissioner Griffin, with modifications.
 * * * * * * * * * * *
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties as:
 STIPULATIONS
1. The parties are subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. The date of the alleged injury was August 29, 2004.
3. At all relevant times, C T Durham Trucking regularly employed three or more employees and was bound by the Workers' Compensation Act. An employer-employee relationship existed between defendant-employer and plaintiff on or about August 29, 2004.
4. On August 29, 2004, the carrier on the risk was Guard Insurance Company.
5. On August 29, 2004, plaintiff was an employee of CT Durham Trucking Company, Inc. earning an average weekly wage of $845.46, corresponding to a weekly compensation rate of $563.92, according to the Form 22 agreed to by the parties.
 * * * * * * * * * * *
The following were marked and received into evidence as:
 EXHIBITS
1. Stipulated Exhibit Number 1, Pre-Trial Agreement
2. Stipulated Exhibit Number 2, Medical Records
3. Defendants' Exhibit Number 1, Plaintiff's Responses to Defendants' First Set of Interrogatories
4. Defendants' Exhibit Number 2, Alltel cellular phone log for witness Christopher Walsh
 * * * * * * * * * * *
The following were received into evidence as:
 DEPOSITIONS
1. Oral deposition of James Brady Kinlaw, Jr., M.D., taken on July 27, 2005.
2. Oral deposition of Elizabeth Ann Durham, taken on August 16, 2005.
3. Oral deposition of William Todd Durham, taken on August 16, 2005.
4. Oral deposition of James R. Hirsch, M.D., taken on November 11, 2005, with Deposition Exhibit Number 1 attached to the deposition transcript.
 * * * * * * * * * * * EVIDENTIARY RULINGS
The objections raised in the depositions are ruled upon according to the law and consistently with this Opinion and Award.
 * * * * * * * * * * *
Based upon all the competent evidence of record and reasonable inferences flowing therefrom, the Full Commission makes the following:
 FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner, plaintiff was 62 years old, married, and had three adult children. Plaintiff worked approximately ten years as a truck driver with C T Durham Trucking. According to trucking company owner William Durham, plaintiff had been a good employee during his tenure with the company.
2. In September 2003, plaintiff was involved in a motor vehicle accident while operating a truck for C T Durham Trucking. Plaintiff sought medical treatment on one occasion at the local hospital and did not miss work as a result of the motor vehicle accident.
3. On August 29, 2004, plaintiff drove his loaded work truck from his home to Goldsboro to deliver liquid waste to a hog farm. When he arrived at the hog farm, no one was present, but plaintiff had a key to enter the premises. As instructed, plaintiff unloaded the waste from a hose connected in the back of his truck into the lagoon. Once he unloaded all the liquid waste, plaintiff climbed the ladder on the top of his truck to close the lid where air was released. On his way down the ladder, plaintiff missed the top rung of the ladder, fell off the truck, and landed on the ground on his back and neck. Immediately, plaintiff experienced pain in his shoulders and left arm.
4. Plaintiff was able to drive his truck back home. En route, he stopped at a gas station about 30 to 45 minutes from the hog farm to call C T Durham Trucking's dispatcher, Christopher Walsh. He left a voicemail message about his accident on Walsh's phone. However, Walsh testified that he did not receive the message and was not aware that plaintiff had fallen from his truck.
5. When plaintiff arrived at his home, he was unable to get out of the truck without assistance from his wife and son. Plaintiff reported to his wife and son that he had fallen off his truck earlier that day. Plaintiff decided to rest and not to seek medical treatment that night.
6. The following morning, plaintiff was experiencing pain in his shoulders, neck, and arm. He was also unsteady on his feet. Plaintiff decided to seek medical treatment due to his excruciating pain. Dr. James Brady Kinlaw, a family physician, evaluated plaintiff for dizziness and numbness in the left arm and hand over the previous 48 hours. Dr. Kinlaw did not note that plaintiff had fallen off his truck the day before. Based on plaintiff's symptoms, Dr. Kinlaw diagnosed plaintiff with ataxia, or the incapacity to walk. Dr. Kinlaw was also concerned that plaintiff may have had a stroke and immediately referred him to the Emergency Room of Randolph County Hospital for further diagnostic testing and evaluation.
7. Plaintiff's son-in-law informed Walsh and Durham that plaintiff was unable to perform his truck route because he was in the hospital for evaluation for a possible stroke. Arrangements were made for C T Durham Trucking to move the truck and trailer from plaintiff's home.
8. Hospital admission notes state that plaintiff "fell out of truck yesterday and having trouble getting out of truck today." They further state that plaintiff had been experiencing dizziness and the inability to walk for the past 48 hours. Hospital physician notes report a four- to eight-week history of difficulty walking and intermittent left arm numbness, which radiated to plaintiff's fingertips. Preliminary diagnosis of plaintiff described a possible stroke and cervical radiculopathy, which was causing his arm pain. MRI scans of the brain and cervical spine were ordered to confirm the diagnosis. Plaintiff was instructed not to drive until released by his physician.
9. On September 7, 2004, Dr. Michael D. Applegate, a neurologist, evaluated plaintiff. The results of the MRI scans revealed that plaintiff had not suffered a stroke and did not have a brain tumor. The MRI of the cervical spine revealed a left lateral disk protrusion at C3-C4. Because plaintiff had reported a 35-pound weight loss in the previous few months, additional tests were ordered to rule out the possibility of neoplastic disease. Again, plaintiff was instructed not to drive until a diagnosis of his condition was confirmed.
10. While plaintiff remained out of work at his physicians' order, Durham called on two to three occasions to get updates on his condition. During these conversations, plaintiff did not report that he had fallen off his truck but did indicate that the physicians were uncertain of his diagnosis.
11. On October 15, 2004, plaintiff completed and submitted a Form 18, Notice of Accident to Employer. This was the first written notice C T Durham Trucking had received about plaintiff's August 29, 2004, back injury. The company dispatcher had, however, received oral notice by recorded voice mail within approximately an hour after the accident.
12. On May 20, 2005, Dr. James R. Hirsch, a neurologist, evaluated plaintiff for severe neck pain, numbness in both arms, and some trouble using his hands. Plaintiff reported the symptoms began after he fell off the back of his truck and landed on his back and the back of his head. At this visit, Dr. Hirsch ordered a new MRI scan of the cervical spine. The new MRI revealed stenosis, or a narrowing of the canal where the spinal cord sits. The stenosis was due to arthritic changes throughout the spine. There was also central cord syndrome, which is known to occur with trauma. After reviewing the results of the MRI scan, Dr. Hirsch diagnosed plaintiff with central cord syndrome and recommended a decompressive cervical laminectomy to relieve the pressure on the spinal cord. Dr. Hirsch performed the surgery on June 15, 2005.
14. Plaintiff returned for follow-up visits with Dr. Hirsch on July 18, 2005, August 17, 2005, and October 19, 2005. Plaintiff reported improvement with each subsequent visit. Dr. Hirsch recommended that plaintiff participate in physical therapy. As of his last examination, Dr. Hirsch was of the opinion that plaintiff was not capable of returning to work as a truck driver. Dr. Hirsch anticipated that plaintiff would reach maximum medical improvement about one year after his surgery.
15. Plaintiff's testimony regarding the circumstances of his injury on August 29, 2004, and the reporting of his injury to C 
T Durham Trucking is accepted as credible by the Full Commission. The dispatcher's report that he did not receive the voicemail is not accepted as credible.
16. Prior to August 29, 2004, plaintiff was able to work consistently for approximately nine hours per day. Plaintiff did not report any significant neck problems or receive regular medical treatment for his neck until his fall at work. Further, his neck symptoms began after the August 29, 2004, fall. Dr. Hirsch rendered the opinion, and the Full Commission finds as fact, that the August 29, 2004, fall from the truck exacerbated plaintiff's underlying stenosis and bruised and damaged the spinal cord, which caused the central cord syndrome.
17. Plaintiff has proven by the greater weight of the competent evidence that his neck condition is causally related to the August 29, 2004, accident. As a result of his neck condition, plaintiff needed reasonable medical treatment, including surgery, to effect a cure, give relief, or lessen the period of disability. Also as a result of his compensable back injury, plaintiff has not been able to earn wages.
18. Although plaintiff did not provide written notice of his work accident within the time prescribed by statute, there was no evidence that defendants had been prejudiced by receiving written notice 15 days beyond the statutory 30 days. Additionally, plaintiff's dispatcher received oral notice of the injury within an hour after it occurred.
 * * * * * * * * * * *
Based upon the foregoing findings of fact, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. On August 29, 2004, plaintiff sustained a compensable injury by accident arising out of and in the course of his employment when he fell off the back of his truck and landed on the ground hitting his back and neck. N.C. Gen. Stat. § 97-2(6).
2. As a result of his compensable injury, plaintiff is entitled to receive temporary total disability compensation at the compensation rate of $563.92 per week beginning August 30, 2004, and continuing until further order of the Industrial Commission. As of the date of the hearing before the deputy Commissioner, plaintiff had not reached maximum medical improvement. N.C. Gen. Stat. § 97-29.
3. As a result of his compensable injury, plaintiff has incurred and continues to incur expenses for medical treatment that is reasonably required to effect a cure, give relief, or lessen the period of disability related to his neck condition, including surgery. Plaintiff is entitled to payment of said expenses by defendants subject to the limitations of N.C. Gen. Stat. § 97-25.1. N.C. Gen. Stat. §§ 97-2(19), 97-25.
4. Although plaintiff did not provide written notice of his work-related injury within 30 days of its occurrence, defendants were not prejudiced by plaintiff's failure to give written notice within the time prescribed by N.C. Gen. Stat. § 97-22.
 * * * * * * * * * * *
Based upon the foregoing Findings of Facts and Conclusions of Law, the Full Commission enters the following:
 AWARD
1. Subject to a reasonable attorney's fee approved herein, defendants shall pay to plaintiff ongoing temporary total disability compensation at the rate of $563.92 per week and continuing until further order of the Industrial Commission. All compensation that has accrued shall be paid in one lump sum, with interest at 8% per year from the date of the hearing before the Deputy Commissioner.
2. Defendants shall pay all medical expenses incurred and to be incurred as a result of plaintiff's compensable injury, for so long as such evaluations, treatments and examinations may reasonably be required to effect a cure, give relief and/or lessen plaintiff's period of disability.
3. A reasonable attorney's fee of 25% of the compensation due plaintiff under Paragraph 1 of this AWARD is approved for plaintiff's counsel and shall be paid as follows: defendants shall deduct 25% of the accrued compensation due plaintiff and defendant shall pay the same directly to plaintiff's counsel. For the balance of the attorney's fees, defendants shall send every fourth check to plaintiff's counsel.
4. Defendants shall pay the costs.
This 31st day of August 2006.
 S/_____________ THOMAS J. BOLCH COMMISSIONER
CONCURRING:
 S/______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
 S/_______________ DIANNE C. SELLERS COMMISSIONER